IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


ROBERT D. AINSWORTH; TAMI L.
AINSWORTH; KARL G. FRINK; LUCINDA
A. FRINK; GORDON D. GRISWOLD;
ELAINE C. GRISWOLD; JOHN K. LINDSEY;
LINDA K. LINDSEY; WILLIAM E.
WHITAKER; SUZANNE R. WHITAKER,                    No. 6:17-cv-01935-MC

          Plaintiffs,                                                  **OPINION AND ORDER**

     v.

MARK ALLEN OWENBY; MICHELLE
ANNETTE PAGE; JENNY REBECCA
SILVEIRA; HOWARD DEE BROWN III;
WILLIAM WALTER TEMPLETON, JR.;
ELISHA TEMPLETON; BRYAN DAVID
PHILP; GUILD MORTGAGE COMPANY,

          Defendants.

_____

**MCSHANE, Judge:**

        Plaintiffs are a group of residential property owners displeased with the effects of an

alleged marijuana production and processing operation hosted on nearby land.  Defendants are

the owners of the land on which the marijuana operation is claimed to be maintained and several

alleged participants in that operation.[1]  As to each defendant, Plaintiffs assert one state-law

nuisance claim and two Racketeer Influenced and Corrupt Organizations Act ("RICO") claims.

---

[1] The Complaint also names Guild Mortgage Company ("Guild") as a defendant.  Guild holds the mortgage on the
contested land.  The Court dismissed Guild from the case at oral argument on August 15, 2018.  As stated on the
record, the Complaint fails to state a claim against Guild for violations of 18 U.S.C. § 1962(c), 18 U.S.C. § 1962(d),
or Oregon nuisance law.  As further specified on the record, the Court can imagine no plausible set of facts under
which Guild would be liable for any of the alleged offenses.  The dismissal was therefore with prejudice.

The case comes before the Court on Defendants' motions to dismiss for lack of subject-matter jurisdiction and, as to the alleged RICO violations, for failure to state a claim upon which relief can be granted. Since each claim satisfies the minimum constitutional requirements for this Court to exercise jurisdiction, Defendants' motion to dismiss for lack of subject-matter jurisdiction is DENIED. Nevertheless, because Plaintiffs fail to allege a compensable property injury under the civil RICO statute, Defendants' motion to dismiss for failure to state a claim is GRANTED. Plaintiffs' RICO claims are therefore DISMISSED without prejudice.

## BACKGROUND

Robert D. Ainsworth, Tami L. Ainsworth, Karl G. Frink, Lucinda A. Frink, Gordon D. Griswold, Elaine C. Griswold, John K. Lindsey, William E. Whitaker, and Suzanne R. Whitaker bring this civil RICO and state-law nuisance action against Mark A. Owenby, Michelle A. Page, Jenny R. Silveira, Howard D. Brown III, William W. Templeton, Jr., Elisha Templeton, and Bryan D. Philp. Compl. ¶¶ 1-13. Their claims arise out of the presence and effects of an alleged marijuana production and processing operation (the "Marijuana Operation") on property owned by Owenby and Page in Lebanon, Oregon.[2] Compl. ¶ 1. Plaintiffs are residential property owners with land neighboring the Owenby and Page property. Compl. ¶¶ 27-28, 30-32.

According to Plaintiffs, in November 2016, Owenby and Page agreed with William Templeton and Elisha Templeton (collectively, the "Templetons") to seek and acquire property

---

[2] In November 2014, Oregon voters approved ballot Measure 91, which led to a series of state legislative actions decriminalizing recreational marijuana, production, possession, distribution, and use under state law. *See generally* Or. Rev. Stat. ch. 475B. In implementing the measure, the legislature allowed each county in Oregon to decide whether it would nonetheless prohibit such activities. *See* Or. Rev. Stat. § 475B.325. Defendants request that the Court take judicial notice of the fact that voters in Linn County, where the alleged Marijuana Operation is located, rejected a measure to block recreational marijuana production and sales. *See* Oregon Liquor Control Commission, *Record of Cities/Counties Prohibiting Licensed Recreational Marijuana Facilities* (last updated Mar. 29, 2018), https://www.oregon.gov/olcc/marijuana/Documents/Cities_Counties_RMJOptOut.pdf. The Court agrees that this is a judicially noticeable fact and takes judicial notice pursuant to Fed. R. Evid. 201. However, the legality of recreational and medical marijuana production, sale, and use in Linn County and under Oregon law is immaterial to resolution of the motions currently before the Court and it is unclear from the present record whether the alleged Marijuana Operation even obtained necessary state and county licenses.

on which to "produce and process" marijuana. Compl. ¶ 15. In December 2016, Owenby and Page purchased their Lebanon property and resolved with the Templetons, Silveira, and Brown to "develop" the property, "erect structures," and "purchase and install equipment, fixtures, and materials" to produce and process marijuana. Compl. ¶ 15. Owenby and Page further agreed with the Templetons, Silveria, and Brown that they would "make a financial investment in the Marijuana Operation, and that in exchange," Owenby and Page "would receive a portion of the [operation's] proceeds." Compl. ¶ 15.

Shortly thereafter, the Templetons, Owenby, Page, Silveira, Brown, and Philp began using the property to "produce[ ] marijuana and distribute[ ] it for sale." Compl. ¶ 22. To that end, Silveria and Brown moved onto the Owenby and Page property in January 2017, "setting up" and "managing" the Marijuana Operation. Compl. ¶ 17. Also in support of the Marijuana Operation, Owenby, Page, and the Templetons purchased and transported to the property materials and equipment for producing and processing marijuana, often with the help of Silveria, Brown, and Philp. Compl. ¶¶ 16, 18. The same defendants made improvements to the land and its structures in furtherance of the Marijuana Operation. Compl. ¶¶ 18-20. In return, the Templetons, Owenby, Page, Silveria, Brown, and Philp have all "received a portion of the proceeds of the Marijuana Operation." Compl. ¶ 22.

Plaintiffs allege that the Marijuana Operation continued to operate through at least December 1, 2017, the date on which they filed their Complaint.[3] Compl. ¶ 22. Since the operation's commencement, a greenhouse "equipped with large, commercial exhaust fans" has operated on the Owenby and Page property "24 hours a day, seven days a week." Compl. ¶ 24. In addition, Owenby, Page, Silveria, Brown, Philp, and Bill Templeton have "regularly burn[ed]

---

[3] Although not contained in the pleadings, Defendants deny that anyone has produced or processed marijuana on the Owenby and Page property since October 2017. Page Decl. ¶ 7. Plaintiffs contend that such activities continue to this day. *See* K. Frink. Decl. ¶¶ 5-7; L. Frink Decl. ¶¶ 8-9; Ainsworth Decl. ¶¶ 4-5.

marijuana debris, trash[,] and discarded items from the [M]arijuana [O]peration, creating thick, noxious smoke." Compl. ¶ 24. Traffic traveling to and from the Owenby and Page property, moreover, has transformed the two dead-end roads on which Plaintiffs live into "busy, and at times unsafe, commercial roadways." Compl. ¶ 26. Plaintiffs "no longer feel safe in their homes and on their properties," citing the presence of "pit bull guard dogs" roaming loose in the neighborhood, "unknown vehicles entering their properties at all hours of the day and night," and at least two reports of "prowling and break-ins" on nearby properties. Compl. ¶ 34.

Plaintiffs allege that, as a result of the "persistent stench of marijuana," ever-present fan noise, and increased traffic, the Marijuana Operation has interfered with the "use and enjoyment of their properties." Compl. ¶¶ 27-32. They note, for example, that they are no longer able to open the windows in their homes, sit outside on their decks and patios, or recreate in their yards. Compl. ¶¶ 27-32. Plaintiffs further allege that the odors, noise, and traffic created by the Marijuana Operation, along with the very fact of the operation's existence, make each of their properties "worth materially less than they otherwise would be" and "harder to sell at any price." Compl. ¶ 35. Finally, Plaintiffs allege that, fearing "the presence of a drug trafficking operation in their neighborhood," they have "formed a neighborhood watch group, . . . purchased and installed cameras and security systems, purchased and installed fencing and gates, and purchased firearms." Compl. ¶¶ 28, 30, 34.

## STANDARDS

I. <u>Motion to Dismiss Under Rule 12(b)(1).</u>

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) tests the subject-matter jurisdiction of a federal court. Under the U.S. Constitution, a federal court is without jurisdiction to resolve any claim for which a plaintiff lacks standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992). At a constitutional minimum, standing requires a plaintiff to show that she has "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotation marks and citations omitted). To satisfy the injury-in-fact requirement, the alleged harm must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.* at 561.

II. <u>Motion to Dismiss Under Rule 12(b)(6)</u>.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow a court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678. When considering a motion to dismiss, a court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-moving party, *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000), but it is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. If a complaint is dismissed, the court must grant the plaintiff leave to amend unless it "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

**DISCUSSION**

Defendants move to dismiss Plaintiffs' action for lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), and, as to each RICO claim, for failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6). Defendants do not dispute that, as alleged, their activities violate the two substantive provisions of RICO relied upon by Plaintiffs, namely 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).[4] They instead argue that Plaintiffs are the wrong parties to bring the instant suit. They contend that Plaintiffs lack constitutional standing to seek relief in federal court and, even if they did not lack constitutional standing, that Plaintiffs have suffered no injuries of the type compensable under the civil RICO statute. Since this Court is without jurisdiction to entertain the merits of any of Plaintiffs' claims if they lack constitutional standing, it addresses that issue first. The Court finds that, although Plaintiffs have constitutional standing to bring their claims, Plaintiffs have not alleged any compensable injuries to property and therefore cannot to state a claim under any provision of the civil RICO statute.

I. <u>Plaintiffs' Constitutional Standing</u>.

Defendants argue that this Court is without jurisdiction to decide the present suit because Plaintiffs lack standing. Under Article III of the U.S. Constitution, the "judicial [p]ower" of federal courts is restricted to "[c]ases" and "[c]ontroversies." U.S. CONST. art. III, §§ 1-2. One component of this constitutional limitation is that a federal court may not "decide the merits of [a] dispute" unless the plaintiff demonstrates that she has "standing" as to each claim and each form of relief sought. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also City of Los Angeles v.*

---

[4] To state a violation of 18 U.S.C. § 1962(c), a plaintiff must plausibly allege that the defendant engaged in (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002). To state a violation of 18 U.S.C. § 1962(d), a plaintiff must plausibly allege that the defendant conspired to engage in conduct which violates § 1962(c). As discussed further in Part II, *infra*, 18 U.S.C. § 1964(c), separate from the activities prohibited under § 1962, narrows the range of plaintiffs who may sue to enforce RICO's substantive prohibitions. It is this aspect of Plaintiffs' RICO claims which Defendants challenge.

*Lyons*, 461 U.S. 95, 105 (1983). To have standing, a plaintiff must show that she has (1) suffered an "injury-in-fact," (2) that the injury is "fairly traceable" to the actions of the defendant, and (3) that the injury is likely to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (internal quotation marks and citations omitted). As relevant here, an injury-in-fact is one which stems from a "legally protected interest" and is both "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560.

In the present case, Plaintiffs allege three separate injuries-in-fact upon which to base standing for their RICO and nuisance claims: (1) a present drop in the fair market value of their properties, (2) past and present lost use and enjoyment of their lands, and (3) past out-of-pocket expenses on firearms, fencing, cameras, and other security measures. Compl. ¶¶ 30-32, 34-35. As to each alleged injury and corresponding claim, Plaintiffs seek only damages and no injunctive or other equitable relief. Compl. ¶ 112. In response, Defendants argue that, because all marijuana-related activities have supposedly ceased on the Owenby and Page property, *see* Page Decl. ¶ 7, Plaintiffs' first two injuries no longer exist and, as a result, cannot be redressed by a favorable decision from this Court. They also argue that, although Plaintiffs' out-of-pocket expenditures constitute an injury-in-fact, they are not fairly traceable to Defendants' alleged activities and therefore cannot form the basis for this Court's exercise of jurisdiction.

The Court finds that Plaintiffs have standing to assert their RICO and nuisance claims based, at the very least, on the lost use and enjoyment of their properties. The Supreme Court has long recognized aesthetic and environmental injuries as injuries-in-fact. *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 686 (1973). To the extent Plaintiffs allege an interference with the use and enjoyment of their land, they allege a cognizable injury-in-fact. Although Defendants contend that any such injury is not "concrete" or

"actual" because their racketeering activities have ceased, it is axiomatic that a plaintiff may recover damages for past harms. *See Lyons*, 461 U.S. at 105-07 (distinguishing between claims seeking damages for past harms and prospective injunctive relief). Plaintiffs here seek damages not only to compensate for their present inability to enjoy the use of their properties, but also for past interferences with that same interest; in turn, even if Defendants' activities had ceased, Plaintiffs would have standing to seek damages, albeit potentially nominal, for the prior months of smoke, noise, and foul odors emanating from the Owenby and Page property.

Defendants' challenge to the jurisdictional facts underlying Plaintiffs' alleged property value injury is both irrelevant and premature. Although courts generally presume the truth of facts alleged in a complaint, a defendant may dispute the truth of *jurisdictional* facts. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Defendants do not argue that economic injuries are non-cognizable injuries or that, to the extent Plaintiffs have experienced a past or present reduction in the value of their properties, they would lack standing to sue. Instead, Defendants suggest that Plaintiffs have not alleged a past economic injury and that there can be no present economic injury because their activities have ended. Although the Court agrees that the Complaint alleges only a present drop in property value, the issue is moot because, as noted above, Plaintiffs need only have standing as to each claim and type of relief sought. Defendants cite no case, and the Court can find none, holding that once a plaintiff demonstrates that she has standing to bring a claim for damages, she must also produce evidence of the injury underlying each *theory* of her damages. Plaintiffs here, based on their use and enjoyment injury, have standing to bring their claims and seek relief in the form of damages—Article III does not place further limitations on their ability to assert alternative theories of damages.[5]

---

[5] Defendants offered another theory at oral argument. They asserted that it would make little sense if a civil RICO claimant could get into federal court based on an injury-in-fact, such as lost use and enjoyment of land, which is not

Moreover, even if Plaintiffs' property value injury were the only one alleged, it would be inappropriate for the Court to resolve the factual dispute at this juncture. Defendants correctly state the general rule that a court may resolve disputes of jurisdictional facts by consulting extra-pleadings evidence. That rule, however, does not govern when the jurisdictional facts are "so intertwined" with substantive aspects of a claim that resolution of the factual dispute would touch the "merits of an action." *Sun Valley Gasoline, Inc. v. Ernst Enters.*, 711 F.2d 138, 139 (9th Cir. 1983). In such a situation, the proper procedure is "to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (citations omitted). Here, as discussed in Part II.A, *infra*, the issue of whether Plaintiffs' lands have lost value is central to the merit of their civil RICO claims. In turn, any challenge to the underlying facts must be made pursuant to Fed. R. Civ. P. 56 or at trial. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (holding that, where jurisdictional facts are intertwined with the merits of a claim, the "trial court should employ the standard applicable to a motion for summary judgment" and, "unless that standard is met, the jurisdictional facts must be determined at trial by the trier of fact.").[6]

---

compensable under the civil RICO statute. Any such injury, they seemed to reason, would not be redressable since, as discussed in Part II.A, *infra*, it could not form part of a viable RICO claim. That argument puts the cart before the horse. The standing doctrine requires only that an alleged injury-in-fact be redressable by a *favorable* decision of the court—it does not require that the plaintiff be guaranteed of a favorable decision. If a defendant could claim that a plaintiff lacked standing on redressability grounds simply because she is unable to state a claim, every motion under Fed. R. Civ. P. 12(b)(1) would be transformed into a decision on the merits. The standing requirement, as applied in the non-generalized grievance context, seeks to ensure actual adversity between parties. That purpose is served here. Standing is a constitutional minimum and does not replace the separate requirement that a complaint allege facts stating a plausible claim for relief. *Cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 ("[T]he absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case" (internal citations omitted)).

[6] The Court need not address the third injury alleged by Plaintiffs—out-of-pocket expenses on additional security measures—because, as discussed above, they satisfy the standing requirement; however, the injury appears to be manufactured, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) ("[R]espondents cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending."), and not fairly traceable to Defendants' conduct because the expenses were incurred as a response to "independent" tortious acts by third parties "not before the court," *Simon v. E. Ky. Welfare Rights Org*., 426 U.S. 26, 41-42 (1976).

II. <u>Plaintiffs' "Statutory" or "RICO" Standing</u>.

Although Plaintiffs' claims satisfy the constitutional requirements for resolution by this Court, their Complaint must still allege facts which, if credited as true, state plausible claims for civil RICO violations. *Iqbal*, 556 U.S. at 678. In much the same way that Article III narrows the range of justiciable claims, the RICO statute itself limits the types of injuries for which relief may be granted by state and federal courts. *See* 18 U.S.C. § 1964(c); *cf. also Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) ("If a plaintiff has suffered sufficient injury to satisfy the jurisdictional requirement of Article III but Congress has not granted statutory standing, that plaintiff cannot state a claim upon which relief can be granted."). Specifically, as part of any civil RICO claim, a plaintiff must plead and ultimately prove (1) an injury to her "business or property" and (2) that the defendant's racketeering activity proximately caused that injury.[7] *See* 18 U.S.C. § 1964(c). Since Defendants challenge the sufficiency of Plaintiffs' pleadings as to both injury and causation, the Court addresses each requirement in turn.

**A. Injury to Business or Property**.

Plaintiffs here do not allege any business-related injuries, so the Court focuses its analysis on whether they have plausibly alleged injury to a property interest. In the Ninth Circuit, this is a two-part inquiry. *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008). First, the alleged injury must be to a recognized property interest. *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc). Whether a specific injury is proprietary, as opposed to "personal" or "emotional," is "typically determined by reference to state law." *Id.* Second, even if an injury is proprietary, it must also result in a "concrete financial loss." *Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc). A plaintiff fails to state a civil

---

[7] Defendants' alleged racketeering activity consists in relevant part of producing, processing, and distributing marijuana on the property owned by Owenby and Page. Compl. ¶¶ 36-37.

RICO claim if she "mere[ly] [alleges] injury to a valuable intangible property interest." *Id.* (internal quotation marks and citations omitted). Similarly, a plaintiff who alleges a pecuniary loss, but from a personal rather than proprietary injury, likewise fails to state a claim under RICO. *Berg v. First State Ins., Co.*, 915 F.2d 460, 464 (9th Cir. 1990).

In the present case, Plaintiffs contend that the (1) diminished use and enjoyment of their properties, (2) reduction in the fair market value of their lands, and (3) expenditures on additional security measures constitute proprietary injuries, each of which has resulted in concrete financial losses. Defendants respond that Plaintiffs' lost use and enjoyment of their land is a quintessentially personal injury and that the expenditures on security measures are merely derivatives of their emotional distress. They further contend that, as alleged, the drops in fair market value of Plaintiffs' properties, although proprietary in nature, have not resulted in the types of pecuniary harm necessary to state a civil RICO claim. In particular, Defendants argue that an abstract drop in fair market value does not amount to a tangible financial loss absent specific allegations of past attempts to rent or sell each property.

The Court agrees with Defendants that, as a matter of law, Plaintiffs' impaired use and enjoyment of their land is a non-compensable personal injury. As noted above, courts generally define "property" by reference to state law. *Diaz*, 420 F.3d at 900; *Evans v. City of Chicago*, 434 F.3d 916, 929 (7th Cir. 2006) ("[U]nder RICO, whether a particular interest amounts to property is quintessentially a question of state law."). In Oregon, interference with a possessor's "use and enjoyment" of her real property is redressable by an action sounding in nuisance. *Jacobson v. Crown Zellerbach Corp.*, 539 P.2d 641, 643 (Or. 1975) (en banc). Oregon courts have long distinguished between nuisance claims arising from "injury to property" and those arising from "personal injury." *Wilson v. City of Portland*, 58 P.2d 257, 259 (Or. 1936); *see also*

*Amphitheaters, Inc. v. Portland Meadows*, 198 P.2d 847, 851 (Or. 1948) (differentiating between claims involving, *inter alia*, "harm to human comfort" and "damages to the land itself"). A defendant's interference with a possessor's "comfort and enjoyment" of her property is a "personal injury," whereas damage to the physical condition or "value" of her land is an "injury to property." *Wilson*, 58 P.2d at 258-59; *cf.* Or. Rev. Stat. § 105.505 (codifying the distinction between damages from injuries to "property" and the "personal enjoyment thereof").

As relevant here, a plaintiff unable to enjoy the use of her property due to an odorous nuisance suffers injury to a personal interest. In *Wilson*, for instance, the Oregon Supreme Court examined whether nuisance claims based on the property-value harms of an odorous garbage dump were conceptually distinct from those based on harms to sensory comforts from the same dump. 58 P.2d at 258-59. The court, in seeking to determine the preclusive effect of a prior judgment awarding lost rental income, held that the plaintiffs were not required to join their claims in a single action. *Id.* at 259. Whereas the rental income claims involved an "injury to the [plaintiffs'] *property*," it explained, the lost comfort and enjoyment claims concerned a "wrongful invasion of the *personal rights* of the plaintiffs." *Id.* (emphasis added). The sensory effects, the court concluded, were a "personal injury," separate from the claimed reduction in fair market value. *Id.*; *see also Borden v. City of Salem*, 436 P.2d 734, 736 (Or. 1968) (en banc) (describing *Wilson* as an "action for damages for personal injuries").

The Ninth Circuit has endorsed this distinction between nuisance claims arising from personal and proprietary injuries. *Oscar*, 965 F.2d at 787. In *Oscar*, an individual leasing an apartment unit brought a civil RICO action against the residents of a neighboring apartment complex for an alleged racketeering enterprise involving "drug dealing" and "other crimes, misdemeanors, nuisances, and annoyances." *Id.* at 784-85. As one of her RICO injuries, the

plaintiff alleged that, because of "the drug dealers living nextdoor [sic]," she had lost the "use and enjoyment" of her leasehold interest. *Id.* at 787. The en banc court, looking in part to the common law of nuisance in California, held that "diminution in enjoyment is not a tangible injury to property." *Id.* The plaintiff's injury, it explained, was instead "like that claimed . . . in a personal injury action." *Id.* (internal quotation marks and citation omitted). Although the plaintiff had no doubt "lost peace of mind," the court acknowledged, "such a loss—even when it flows from a valuable property interest—is a personal injury in the form of emotional distress." *Id.* (internal quotation marks and citations omitted).

Here, the "use and enjoyment" injury alleged by Plaintiffs is not an injury to property. Like the homeowners in *Wilson*, whose senses were offended by the neighboring garbage dump, Plaintiffs' complaints of overwhelming odors and noise form a personal injury. Although actionable under Oregon nuisance law, such harms to human comfort are not compensable under RICO. The Ninth Circuit's reasoning in *Oscar* confirms this conclusion and makes clear that, whereas harm to the physical condition or value of land is a "tangible injury to property," the "diminution of enjoyment" experienced by Plaintiffs is a distinct "personal injury in the form of emotional distress." Plaintiffs note that the Ninth Circuit's reasoning in *Oscar* was based in part on California nuisance law, but they make no attempt to distinguish between California and Oregon law. As interpreted by the Ninth Circuit, California draws the same distinction between personal and proprietary nuisance injuries. If anything, the lone California case relied upon by the *Oscar* majority, *Ingram v. City of Gridley*, 224 P.2d 798 (Cal. Dist. Ct. App. 1950), provides less explicit support for such a distinction than the Oregon cases relied upon here.

The out-of-circuit authority cited by Plaintiffs is easily distinguishable on this point. In *Safe Streets Alliance v. Hickenlooper*, the Tenth Circuit reversed the dismissal of a civil RICO

action brought by the residential neighbors of a licensed marijuana production and processing operation in Colorado. 859 F.3d 865, 876 (10th Cir. 2017). Defendants, like those in the present case, argued that the plaintiffs' diminished "use and enjoyment" of their properties was a personal rather than proprietary injury. *Id.* at 886. The court disagreed, holding that the plaintiffs adequately alleged "an injury to their property in the form of a present interference with their use and enjoyment of that land." *Id.* In doing so, however, it relied upon Colorado nuisance law as the source of the plaintiffs' protected interest, explaining that the defendants had failed to cite any state "authority suggesting that a landowner's complaints about a neighbor's recurrent emissions of foul odors are conceptually unmoored from the owner's property rights." *Id.* As discussed above, that is not the case here—Oregon law *does* draw a distinction between nuisance claims arising from personal and proprietary injuries. Moreover, to the extent Oregon law mirrors that of California, the Ninth Circuit's endorsement of this distinction in *Oscar* is binding upon this Court and mandates a different result than that in *Safe Streets*.

The Court also agrees with Defendants that Plaintiffs' out-of-pocket expenses for firearms, fencing, gates, and security cameras derive from personal injuries and are therefore not compensable under RICO. It is undisputed that a plaintiff's "emotional distress" is not an injury to property within the meaning of the civil RICO statute. *Diaz*, 420 F.3d at 900 (citing *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992)); *see also Oscar*, 965 F.2d at 787 (citing *Berg*, 915 F.2d at 464). Importantly, a plaintiff cannot transform a "fundamentally personal injury" into a proprietary one by expending financial resources or incurring "economic losses" therefrom. *Oscar*, 965 F.2d at 788 (citing *Doe*, 958 F.2d at 770); *see also Berg*, 915 F.2d at 464 ("Even if the [plaintiffs] had incurred pecuniary losses from emotional distress, they would not be

compensable under RICO."). Such losses are "plainly derivative" of "personal injuries" which are not actionable under RICO. *Diaz*, 420 F.3d at 900 (quoting *Doe*, 958 F.2d at 770).

A plaintiff who purchases a home security system to protect against threats arising from a defendant's racketeering activity does not suffer an injury to property. In *Doe*, for instance, the plaintiff brought a civil RICO action against a divorce attorney who demanded sexual relations in return for discharging her debts and continuing to represent her in divorce proceedings. 958 F.2d at 765-66. As part of her claim, the plaintiff alleged that the attorney had threatened her when she ended the relationship and that, as a result, she invested in a home security system for protection. *Id.* at 769-70. The investment in the security system, she argued, was an injury to property. *Id.* The court rejected this characterization, holding that the plaintiff's purchase of the security system flowed from her non-compensable "emotional distress." *Id.* at 770. "Most personal injuries . . . will entail some pecuniary consequences," it reasoned, but "a financial loss does not, by definition, establish that [a plaintiff] has suffered a business or property injury." *Id.* Instead, to plead an injury to property, a plaintiff must allege both a pecuniary loss *and* an underlying harm to a property interest valid under state law. *Id.*

Here, Plaintiffs' investments in security measures do not transform their distress over neighborhood safety into an injury to property. Like the plaintiff in *Roe*, whose investment in a home security system failed to convert her concerns about personal safety into a proprietary harm, Plaintiffs in the present case cannot transform their apprehension of third-party prowlers into a compensable RICO injury simply by reaching for their wallets. Stated differently, it is not enough that Plaintiffs have alleged concrete financial losses because those losses are derivative of their emotional distress and not a property interest recognized under Oregon law—the financial loss is necessary but not sufficient to state a cognizable RICO claim.

In an attempt to sidestep this fact, Plaintiffs cite a seemingly contrary line from the Ninth Circuit's opinion in *Oscar*. In the context of explaining what constitutes a "financial loss," that court contrasted a hypothetical "out-of-pocket" purchase of a "security system" with the alleged drop in the fair market value of the plaintiff's apartment. 965 F.2d at 786. The court explained that whereas the hypothetical out-of-pocket expenditure would be a concrete financial loss, a dip in property value like that claimed by the plaintiff was not a tangible loss because the plaintiff did not own the apartment and had no past, present, or future intent to monetize her leasehold interest by subletting the unit. *Id.* at 786-87. The purpose of the example was to illustrate a tangible economic loss, not to hold that a plaintiff suffers a proprietary injury based *solely* on such a loss. *See id.* at 788 (discussing with approval *Doe*'s rejection of a "RICO claim for economic losses which derived from a fundamentally personal injury"). The interpretation sought by Plaintiffs is simply irreconcilable with other portions of the *Oscar* opinion, as well as subsequent Ninth Circuit precedent confirming that a civil RICO plaintiff must allege "both [a] property interest and [a] financial loss." *Diaz*, 420 F.3d at 900.

Whether Plaintiffs have adequately alleged an injury to property therefore turns on the reduction in the fair market value of their lands. Defendants concede, as they must, that a reduction in the fair market value of land is an injury to property. As discussed above, however, a RICO claimant must also "show proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (citation omitted). The corollary to this principle is that a plaintiff's alleged financial loss cannot be "purely speculative." *Oscar*, 965 F.2d at 787. Defendants contend that because the Complaint lacks specific allegations of attempts to rent, sell, or otherwise monetize their property interests, Plaintiffs fail to plead a "concrete financial loss." Under this view, a

plaintiff seemingly cannot state a civil RICO claim if the pecuniary loss on which she relies is in any way contingent upon the occurrence of future events. Plaintiffs, by contrast, argue that simply possessing a property interest is sufficient to state a civil RICO claim if the claimant alleges a decline in its fair market value, regardless of whether she also alleges a past or even future intent to monetize that interest.

The Court disagrees with both positions and instead finds that a plaintiff who has not alleged specific prior attempts to monetize a property interest must plausibly allege at least a present intent or desire to do so. In *Oscar*, for example, the Ninth Circuit held that an abstract drop in the fair market value of the plaintiff's leasehold interest was not a concrete financial loss. 965 F.2d at 787. It explained that any financial loss claimed by the plaintiff was "speculative" because she had not "alleged that she ever sublet the apartment, that she ever attempted to sublet the apartment, or even that she ever wished or intended to sublet the apartment." *Id.* The fact that the plaintiff possessed a property interest with diminished value was irrelevant without, at the very least, a "wish[ ] or inten[t]" to monetize that interest. *Id.* To be sure, the court noted that one "might measure an owner's loss [as opposed to a renter's] by the diminution in fair market value." *Id.* at 786. That comment, however, was in the context of considering how to *quantify* any potential harm to the plaintiff's property interest. The court went on to explain, as noted above, that the equivalent measurement for a renter would be the difference in fair market value of a sublet. *Id.* at 787. The court did not hold that an abstract drop in either measurement would constitute a concrete or "actual" loss. *Id.* at 785 n.1.

Similarly, in *Steele v. Hospital Corp. of America*, 36 F.3d 69 (9th Cir. 1994), the Ninth Circuit rejected an attempt to characterize an abstract drop in the value of a plaintiff's insurance benefits as a tangible financial loss. In *Steele*, patients of an adolescent psychiatric care unit and

their parents brought a civil RICO action against the unit's doctors and administrators for overbilling their insurance plans. 36 F.3d at 70. The plaintiffs, relying on their property interest in the insurance benefits, argued that they had suffered a concrete financial loss in the form of "depleted" benefits. *Id.* As one parent explained, had the additional insurance benefits been available, "I could have used some of those benefits for myself." *Id.* at 70-71. In dismissing the action, the court held that this was a "speculative injury," not a "concrete financial loss." *Id.* at 71. It reasoned that any "concrete" pecuniary loss was "contingent on [the parent] actually seeking medical care for himself" and having to pay for otherwise covered services. *Id.* As in *Oscar*, the mere claim that the plaintiffs' property interest was worth less as a result of the racketeering activity was insufficient absent a specific past or present intent to convert that interest into a tangible financial loss.

Although the concrete loss requirement has been relaxed somewhat, a plaintiff must still plead the potential and intent to convert her abstract property interest into a tangible loss. In *Diaz*, a former prisoner sued dozens of city officials alleging widespread misconduct resulting in his false imprisonment and conviction. 420 F.3d at 898. As one of his RICO injuries, the plaintiff argued that his incarceration had interfered with his ability and intent to seek out employment, a proprietary injury giving rise to a concrete financial loss in the form of forgone wages. *Id.* The court, noting that California law recognized prospective business relations as a property interest, held that the inability to "pursue valuable employment opportunities" was a concrete financial loss. *Id.* at 900. Although the plaintiff was entitled to no wages from prospective employers and any financial loss was therefore as yet unrealized, his injury was tangible because not only did he possess a valuable property interest, but he had a present intent to monetize it. As the court explained, "[t]here may be a practical difference between current

and future employment for purposes of RICO – for instance, it may be easier to prove causation or determine damages for . . . current employment – but this difference is not relevant to whether there was an injury to business or property." *Id.* at 900-01 (internal quotation marks omitted).

In the present case, Plaintiffs fail to plausibly allege a concrete financial loss. Like the unsuccessful claimants in *Oscar* and *Steele*, Plaintiffs allege no past or present intent to rent, sell, or otherwise monetize their property interests. To the contrary, as currently drafted, the Complaint suggests that the burdened lands house private residences which Plaintiffs have no desire or intent to rent or sell. Although it is certainly reasonable to infer that their fair market values have dropped, that is an abstract harm. Unlike in *Diaz*, the Complaint lacks factual allegations from which to infer that Plaintiffs are actively seeking to monetize their interests. Indeed, even though the plaintiff's ability to monetize his interest in *Diaz* was contingent upon future events, he at least alleged a present intent to seek out a future financial benefit. That is not the case here. Plaintiffs are not required to offer detailed statics, appraisals, or other information quantifying their losses at this stage in the litigation, but they must do more than allege that, in an abstract sense, their lands are worth less. They must make good faith allegations that they attempted or currently desire to convert those interests into a pecuniary form.[8]

The Tenth Circuit's contrary holding in *Safe Streets* is once again distinguishable. In *Safe Streets*, the court held that an alleged reduction in the fair market value of the plaintiffs' lands was a compensable injury to property. 859 F.3d at 887-88. As in the present case, the panel found it plausible that a prospective buyer would be willing to pay less for land burdened by the odors and presence of a neighboring crime syndicate. *Id.* Unlike the present case, however, the court reasoned that this fact alone—that is, the abstract reduction in the fair market

---

[8] The Court admits that the concrete loss requirement, along with its corollary prohibition on speculative harms, is less than clear following *Diaz* and likely less restrictive than it was after *Steele*; but the requirement nevertheless remains and, if it is to have any substance, it cannot be satisfied here.

value of the plaintiffs' lands—was sufficient to state a claim.  *Id.* at 888.  In doing so, it expressly "refuse[d] to follow" the rule adopted in *Oscar* that, as part of any civil RICO claim, "a plaintiff must plead a concrete financial loss."  *Id.* (citing *Oscar*, 965 F.2d at 785).  The lower court, it held, was wrong to dismiss the plaintiffs' Complaint for alleging no "actual facts" describing a "concrete financial loss."  *Id.*  This Court, unlike the Tenth Circuit, is not at liberty to disregard the Ninth Circuit's repeated admonitions that "concrete financial loss" is an indispensable element of a RICO claim.  Plaintiffs therefore fail to plead a compensable injury to property under the civil RICO statute and must amend their Complaint accordingly.

**B.  Proximate Cause**.

A RICO claimant must also plausibly allege that any compensable property injury was proximately caused by the defendant's racketeering activity.  *See* 18 U.S.C. § 1964(c); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265-68 (1992).  Defendants here argue that, even if the drop in fair market value of Plaintiffs' lands constitutes an injury to property, their racketeering activity is not a proximate cause of that injury.  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  A plaintiff injured only "indirectly" by a defendant's conduct, such as through harms passed on by a third party, is "generally said to stand at too remote a distance to recover."  *Holmes*, 503 U.S. at 268-69.  A plaintiff, however, is not required to plead that she is a victim of the defendant's underlying crime.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649-50 (2008).

To help operationalize these general principles and determine whether an injury is "too remote," courts in the Ninth Circuit focus on three factors:

(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be

difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

*Newcal Indus. Inc. v. Icon Office Solution*, 513 F.3d 1038, 1055 (2008). These factors are "nonexhaustive," *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169 (9th Cir. 2002), and no single factor is dispositive, *see Canyon Cty.*, 591 F.3d at 983. The controlling inquiry remains whether an injury is a "direct" or "indirect" result of the defendant's conduct. *See id.* at 982 (analyzing "whether the alleged violation led directly to the plaintiff's injuries").

In *Safe Streets*, the Tenth Circuit methodically walked through the Supreme Court's various formulations of the "indirect injury" limitation and easily concluded that the plaintiffs had plausibly alleged a direct link between the defendants' marijuana operation and the claimed reductions in property value. 859 F.3d at 890-91. The court explained that the landowners were suing to "recover for injuries to their own land, not harms to third parties," and that "no intermediary [had broken] the causal chain . . . between the enterprise's foul emissions" and the plaintiffs' claimed property injuries. *Id.* at 890-91. In addition, it reasoned that the declines in property value were "caused by the Marijuana Growers' criminal cultivation of marijuana *itself*" and that the defendants' enterprise was the "direct source of all the alleged injuries to the [plaintiffs'] land." *Id.* at 891 (emphasis in original). "[I]t is sufficient," the court concluded, that the plaintiffs' reduced property values were the "direct byproduct[ ] of the location and manner in which the Marijuana Growers [were] conducting their operations." *Id.* at 891.

On the issue of causation, the Court finds the Tenth Circuit's reasoning persuasive and adopts it here.[9] The facts of the present case are virtually indistinguishable and, although the

---

[9] Unlike the issue of whether a plaintiff has been injured in her business or property, the issue of proximate causation is not tied to state law and does not implicate divergent Ninth Circuit and Tenth Circuit interpretations of the civil RICO statute. The Tenth Circuit's analysis draws on generally accepted principles articulated by the Supreme Court and is conceptually distinct from those portions distinguished earlier in this opinion.

*Safe Streets* court did not expressly discuss the three-factor test employed by the Ninth Circuit, those factors do not weigh in favor of a different result. Defendants point to no persons more directly injured by their alleged racketeering activities. If Plaintiffs cannot sue to vindicate the federal drug laws and recover for any compensable injuries, it is difficult to imagine a person who could. In addition, there is no reason to assume that ascertaining the existence and amount of Plaintiffs' damages attributable to Defendants' racketeering activity will be too difficult. Plaintiffs allege facts detailing how and why Defendants' activities are causing a present drop in the fair market value of their properties, *see, e.g.*, Compl. ¶¶ 24, 26-28, 30-35, and "[i]t is inappropriate at this stage to substitute speculation for the complaint's allegations of causation." *Mendoza*, 301 F.3d at 1171. If, as alleged, Defendants' activities are producing putrid odors, constant noise, excessive traffic, and reputational harms, a decline in the fair market value of Plaintiffs' land "is at least plausible enough to survive a motion to dismiss, whatever difficulty might arise in establishing how much lower" the values have become. *Id.*

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of subject-matter jurisdiction is DENIED. Defendants' motion to dismiss for failure to state a claim is GRANTED. Plaintiffs' RICO claims are therefore DISMISSED without prejudice. The Court defers any decision regarding its exercise of supplemental jurisdiction over Plaintiffs' remaining state-law nuisance claims pending a status conference with the parties.

IT IS SO ORDERED.

DATED this 17th day of August, 2018.

*/s/* Michael J. McShane
Michael J. McShane
United States District Judge